Oneida Indian Nation of New York, Respondent, v Michael Burr et al., Appellants.

Third Department, December 23, 1987

APPEARANCES OF COUNSEL

*Bertram E. Hirsch* for appellants.

*DeFrancisco, Menkin & Brunetti (John A. DeFrancisco* of counsel), and *Zuckerman, Spaeder, Goldstein, Taylor & Kolker*

*(Christine Nicholson* and *William W. Taylor, III,* of counsel), for respondent.

## OPINION OF THE COURT

LEVINE, J.

The complaint in the instant action alleges that plaintiff is the Oneida Indian Nation, one of the six original tribes of the Iroquois confederacy, and the owner of improved real property on the Oneida Indian Reservation in Madison County. In the action, plaintiff seeks compensatory and punitive damages in tort based upon allegations that defendants, who were nonreservation Indians, committed trespass, intentionally injured plaintiff's physical property and interfered with plaintiff's business operation of a bingo establishment on the reservation. Defendants answered and pleaded several causes of action against third parties, denoted "counterclaims".

Plaintiff and the named third parties in the counterclaims moved to dismiss said counterclaims on grounds, *inter alia,* that personal jurisdiction had not been acquired over those third parties. Defendants then cross-moved to dismiss the complaint because plaintiff, as an Indian tribe, cannot bring suit in the courts of New York. Supreme Court granted the motion to dismiss the counterclaims and denied defendants' motion to dismiss the complaint. Supreme Court found that Indian Law § 5, as amended in 1953 (L 1953, ch 671), in conjunction with 1950 Federal legislation (25 USC § 233 [64 US Stat 845]) conferred jurisdiction upon the New York courts over an action such as this where an Indian tribe brings suit for damages under State tort law. This appeal by defendants ensued.

The sole issue raised on appeal is whether Supreme Court correctly ruled that plaintiff has capacity to sue by reason of 25 USC § 233 and Indian Law § 5. The Federal statute provides in pertinent part that: "The courts of the State of New York under the laws of such State shall have jurisdiction in civil actions and proceedings between Indians or between one or more Indians and any other person or persons to the same extent as the courts of the State shall have jurisdiction in other civil actions and proceedings, as now or hereafter defined by the laws of such State" (25 USC § 233). Indian Law § 5 similarly provides that: "Any action or special proceeding between Indians or between one or more Indians and any other person or persons may be prosecuted and enforced in

any court of the state to the same extent as provided by law for other actions and special proceedings." Defendants contend that it was settled in *Johnson v Long Is. R. R. Co.* (162 NY 462) and has been followed ever since that an Indian tribe lacks a legally cognizable corporate existence and, therefore, cannot bring suit in its own name without special enabling legislation. They further argue that Supreme Court's reliance on 25 USC § 233 and Indian Law § 5 was misplaced. Each statute, by its express terms, only confers jurisdiction in proceedings involving "Indians". Neither explicitly enables a suit to be brought in the name of a tribe. On the other hand, there are statutory provisos in 25 USC § 233 wherein specific references are made to tribes, e.g., that a tribe may, before the effective date of the statute, declare which tribal rules and customs it wishes to preserve as governing law and have them published in the Federal Register. According to defendants, this explicit usage of the phrase "Indian tribe" in the provisos to 25 USC § 233 demonstrates that the omission of a reference to tribes in the jurisdictional portion of the statute was intentional.

Defendants also quote copiously from the debates and the reports which comprise the legislative history of 25 USC § 233 to demonstrate that there was no congressional intent to extend State court jurisdiction to actions brought by Indian tribes. This legislative history indicates that 25 USC § 233 had three general purposes: (1) to alleviate the handicaps of reservation Indians from obtaining adequate legal redress as a result of the absence or inadequacy of tribal courts; (2) to remedy the dearth of substantive Indian law governing, *inter alia,* commercial, employment and family relations among reservation Indians and between them and non-Indians; and (3) to promote the integration of Indians into the general society. Defendants argue that none of these aims pertains to or is furthered by giving Indian tribes access to the State courts.

Regarding Indian Law § 5, defendants contend that the legislative history provides even less support for any implication that tribes were to be given the right to litigate in the New York courts in their own names. They cite to memoranda in the Governor's Bill Jacket which support approval of the bill which became the present Indian Law § 5 (L 1953, ch 671), and indicate that the purpose of the enactment was to confer concurrent jurisdiction upon the State courts with "peacemaker" courts on three specific Indian reservations. Defen-

dants also point to other sections of the Indian Law enacted or amended either before or after the present Indian Law § 5 as being inconsistent with or superfluous to a construction of the statute giving Indian tribes full direct access to State courts in all civil proceedings. Defendants argue that all of the foregoing impels the conclusion, as a matter of law, that 25 USC § 233 and Indian Law § 5 do not enable plaintiff to bring this action in the courts of this State.

We disagree. At the outset, we find untenable as a ground for denying capacity to sue that Indian tribes lack a cognizable corporate existence to initiate an action in their own name. Under Federal common law, the tribes have long and repeatedly been recognized as jural entities, holding title to their territories and having standing to enforce their possessory rights through legal actions brought in their own names *(see, e.g., Oneida Indian Nation v County of Oneida,* 414 US 661, 667-669; *Creek Nation v United States,* 318 US 629, 640; *New York Indians,* 5 Wall [72 US] 761 [1866]). It is apparent, therefore, that the true basis for denying the tribes access to State courts has been the doctrine of Indian dependency, as expressed in *Johnson v Long Is. R. R. Co.* (162 NY 462, 468, *supra),* that a tribe and its individual members "are regarded as the wards of the state, and generally speaking, possessed of only such rights to appear and litigate in courts of justice as are conferred upon them by statute". If the tribes are jural entities, the concept of dependency as a source of incapacity to sue is more readily amenable to reversal by a statute of general application, such as 25 USC § 233 or Indian Law § 5.

We find equally untenable defendants' contention that the statutory language and legislative history of 25 USC § 233 admits of no interpretation other than the exclusion of Indian tribes from the conferral of State court jurisdiction over the legal disputes of "Indians". First, it is by no means unprecedented for a statutory reference, even to "Indian" in the singular, to be interpreted generically to include Indian tribes, especially when important procedural benefits to Indians in litigation are being created *(see, Wilson v Omaha Indian Tribe,* 442 US 653, 655).

Second, contrary to defendants' contention, the references to Indian tribes in the provisos to 25 USC § 233 are at least as, if not more, consistent with a legislative intent to permit tribes to litigate as such in New York courts than the opposite conclusion. The provisos to 25 USC § 233 guarantee that the statutory expansion of State court jurisdiction will not subject

Indian reservation lands to State and local taxation, or subject such lands "or any Federal or State annuity in favor of Indians or Indian *tribes,* to execution on any judgment rendered in the State courts", or "[authorize] the alienation from any Indian nation, *tribe,* or band of Indians of any lands within any Indian reservation in the State of New York" (emphasis supplied). Thus, the historic Indian land title immunities were to be preserved, all of which were traditionally *tribal* in nature *(see, Oneida Indian Nation v County of Oneida, supra,* at 667-670). It is hard to conceive how such *tribal* immunities could be endangered in litigation restricted solely to individual Indians, to the exclusion of Indian tribes. Thus, it is readily inferable that the drafters contemplated that the tribes themselves could appear as parties in the State courts as a result of the enactment of 25 USC § 233.

Even more significant in this regard is the final proviso to 25 USC § 233, which was added on the floor during the congressional debates *(see, Oneida Indian Nation v County of Oneida, supra,* at 680-681). Under that proviso, the statute disclaimed any purpose to confer jurisdiction on the New York courts or to make applicable New York law "in civil actions involving *Indian lands or claims with respect thereto* which relate to transactions or events transpiring prior to [September 13, 1952]" (25 USC § 233 [emphasis supplied]). The statement in support of this amendment by its sponsor (Representative Morris) reveals that its purpose was to forestall application of the State Statute of Limitations to pre-1952 land claims (96 Cong Rec 12460 [81st Cong, 2d Sess]; *see, County of Oneida v Oneida Indian Nation,* 470 US 226, 241). It was well documented in the case reports and clearly well known when this proposal was made that such land claims almost invariably were advanced by the New York tribes based upon rights under their aboriginal title or as conferred upon them by treaty or statute *(see generally, Oneida Indian Nation v County of Oneida, supra,* at 671-674). Indeed, the sponsor's apprehension was well founded. In *Seneca Nation v Christy* (162 US 283), application of New York's Statute of Limitations was upheld to preclude such a tribal claim brought in the State courts under a State enabling act authorizing the tribe to sue in its own name. Thus, again, the last proviso would be "drain[ed] * * * of * * * significance" if 25 USC § 233 is construed as excluding suits (including land claims) brought by Indian tribes *(Wilson v Omaha Indian Tribe,* 442 US 653, 665, *supra).*

Nor do we find conclusive evidence in the legislative history cited by defendants that tribal litigation was not to be included within the coverage of 25 USC § 233. There is nothing inconsistent with the purposes described throughout the congressional debates and reports in enabling Indian tribes to prosecute actions in the State courts. Congress, during the era when 25 USC § 233 was adopted, was surely aware of the disabilities of the tribes in pursuing land and other claims arising out of tribal ownership as a result of the doctrine of dependency, under which the tribes and their members were considered as "wards of the state" *(see, Johnson v Long Is. R. R. Co.,* 162 NY 462, *supra).* Diminishment of that dependency was clearly a primary goal of 25 USC § 233. "[T]his committee is especially interested in passing legislation which will lead to the gradual assimilation of the Indian population into the American way of life, and the *gradual but final complete removal of governmental supervision and control.* This bill seems to be a real step in this direction" (H Rep No. 2720, 81st Cong, 2d Sess, 1950 US Code Cong & Admin News 3732 [emphasis supplied]). Such a purpose was at least as applicable to the tribes as to individual Indians.

Even paying full heed to defendants' arguments, the foregoing discussion demonstrates beyond peradventure that, at minimum, there are ambiguities in both the language and legislative history of 25 USC § 233 as to whether it authorizes suits in Supreme Court by Indian tribes based upon State law. This being so, this case is controlled by the " 'eminently sound and vital canon' " of liberal construction of statutory ambiguities in favor of expansion of Indian rights *(Bryan v Itasca County,* 426 US 373, 392, quoting *Northern Cheyenne Tribe v Hollowbreast,* 425 US 649, 655, n 7; *see also, Wilson v Omaha Indian Tribe, supra,* at 666).

We similarly reject the narrow construction of Indian Law § 5 urged by defendants. The legislative history cited by defendants which indicates that the statute was only intended to confer State court jurisdiction concurrent with the tribal courts of three specific Indian reservations is, as even defendants concede, more restrictive than the most literal reading of the language of Indian Law § 5. The dominant theme of the legislative history of the section is that it was proposed and enacted to implement the conferral of jurisdiction effected by 25 USC § 233 *(see,* 1953 NY Legis Ann, at 214). The State Joint Legislative Committee on Indian Affairs which spon-

sored Indian Law § 5 was the guiding force behind passage of 25 USC § 233. Since the State statute was based upon and designed to implement 25 USC § 233, it should be interpreted harmoniously with the earlier Federal legislation to grant plaintiff access to the New York courts to prosecute its damage claim herein (accord, *Matter of Marx v Bragalini,* 6 NY2d 322, 331; *Matter of New York State Labor Relations Bd. v Holland Laundry,* 294 NY 480, 492-493; *Matter of Central Hudson Gas & Elec. Corp. v Public Serv. Commn.,* 108 AD2d 266, 271).

KANE, J. P., MAIN, CASEY and WEISS, JJ., concur.

Order affirmed, with costs.