The People of the State of New York, by Robert Abrams, as Attorney-General of the State of New York, Appellant, v Joseph Anderson et al., Respondents.

Tuscarora Warriors Bingo Commission et al., Respondents, v Morley Clause, Jr., et al., Appellants.

Fourth Department, May 27, 1988

### APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Peter Sullivan* of counsel), for appellant in the first above-entitled action.

*Kavinoky & Cook (Joseph Zdarsky* of counsel), for respondents in the first above-entitled action.

*Curtis G. Berkey* for appellants in the second above-entitled action.

*Timothy J. Toohey (Joseph Zdarsky* of counsel), for respondents in the second above-entitled action.

### OPINION OF THE COURT

DENMAN, J.

■ In the first of these related appeals, the Attorney-General appeals from a judgment of Supreme Court which dismissed his petition pursuant to Executive Law § 63 (12) to enjoin, as violative of tribal law, a commercial bingo enterprise on the Tuscarora Indian Reservation conducted by respondents Anderson and Chew, members of the tribe. The Attorney-General argues that the court erroneously dismissed the petition on the grounds that the Attorney-General lacks standing to enforce tribal law and that the court lacks subject matter jurisdiction of a suit between the State and the Indians. We hold that the Attorney-General lacks standing to sue to enjoin violations of tribal law under Executive Law § 63 (12) and that the petition thus was properly dismissed.

■■ In the second action, defendants, named and unnamed individual members of the Tuscarora Nation, appeal from a separate order of Supreme Court which, in an action for injunctive and monetary relief, granted the motion of plaintiffs Joseph Anderson and the Tuscarora Warriors Bingo Commission for a preliminary injunction limiting defendants' picketing activity against the bingo operation and enjoining any other interference with it. On appeal, defendants argue that the action is barred by the doctrine of sovereign immunity, that the court lacks subject matter jurisdiction, and that the court erred in granting plaintiffs' request for preliminary injunctive relief. We hold that the action is not barred by the doctrine of sovereign immunity, that the court has subject matter jurisdiction of the dispute, and that plaintiffs demonstrated their entitlement to a preliminary injunction.

## General Background

Both cases arise out of an intratribal dispute over the operation of a high stakes commercial bingo enterprise by the Tuscarora Warriors Bingo Commission, an unincorporated association which leases the bingo hall from the owner of the property, Joseph Anderson. Anderson operates a gas station and cigarette stand next to the bingo hall on an adjacent portion of his property and resides behind the bingo hall. Both businesses are located on State Route 31 within the boundaries of the Tuscarora Reservation in Niagara County. Both businesses serve the general public, Indians and non-Indians.

Almost immediately after the opening of the bingo hall on May 28, 1987, the games were protested by an antigambling faction of the tribe which controls and has the support of the tribe's alleged governing body, the Council of Chiefs (Council). The Council bases its opposition to the bingo operation on its claim that an 1885 tribal law prohibits all forms of gambling on the reservation. That ancient enactment was allegedly reaffirmed by the Council on April 1 and again on June 10, 1987. Following the opening of the bingo hall, the Council obtained the recognition and support of State and Federal authorities in upholding its antigambling position. Moreover, lacking a tribal police force, the Council purportedly deputized certain members of the tribe to enforce the antigambling law. The antibingo demonstrations consisted, at least in part, of those "enforcement" efforts. Up to 100 antibingo protestors picketed at the site, allegedly interfering with patronage of the bingo hall and gas station as well as access to the Anderson residence. On occasion, the antibingo forces provoked confrontations with up to 70 probingo workers and supporters. The confrontations became violent at times and, eventually, State and local police, at times numbering more than 100, had to be deployed to keep peace and prevent interference with traffic on Route 31. The situation persisted for several months before and after the commencement of these actions.

### Tuscarora Warriors Bingo Commission and Anderson v Clause et al.

By order to show cause granted July 24, 1987, plaintiffs, the Tuscarora Warriors Bingo Commission (by its president, Jerry Chew) and Joseph Anderson, commenced an action for a permanent injunction and $200,000 in damages and moved for a temporary restraining order and preliminary injunction

enjoining interference with the bingo operation and gasoline business. The motion was supported by the affidavit of Joseph Anderson, who averred that defendants had unlawfully interfered with the ingress and egress of patrons, employees, suppliers and others to and from his residence, the gas station and the bingo hall. Anderson averred that such actions threatened irreparable injury to those businesses and that there was no adequate remedy at law. The summons and complaint named five individual defendants, all members of the tribe, known to be engaged in antibingo activities and also named John Doe and Jane Doe as representative of other protestors, about 150 of whom were named on a list appended to the complaint. The complaint alleged trespass, defamation, illegal boycott, and unlawful interference with the conduct of the bingo operation and gas station as a result of defendants' use and threats of force, disorderly conduct, use of abusive language and interference with vehicular and pedestrian traffic. The complaint specifically alleged that the Bingo Commission was "duly authorized by virtue of the customs, practices and traditions of the Tuscarora Nation of Indians to operate an Indian-owned Bingo Hall upon and within the boundaries of the said Tuscarora Indian Reservation".

Without answering or formally moving, defendants opposed plaintiffs' motion for a preliminary injunction and sought dismissal of the complaint. Defendants presented the affidavit of Chief Leo Henry, the clerk of the Council, as well as that of Curtis Berkey, defendants' attorney. Chief Henry averred that plaintiffs' operation of the bingo hall was in violation of tribal law and that the Council, "in the exercise of its governmental authority, has expressly authorized certain individuals to assist the Chiefs in enforcing its anti-gambling law and to keep the peace during this law enforcement effort". According to Chief Henry, the designated enforcers included all five of the named defendants in plaintiffs' action. Chief Henry averred that the Council was recognized by the Federal and State Governments as the lawful governing body of the tribe, as shown by letters attached to the Chief's affidavit. Those letters were written by an official in the Governor's office and by an Assistant Secretary for Indian Affairs in the United States Department of the Interior in response to the demand of the Council that the Federal and State Governments restrain their citizens from entering the reservation for the purpose of playing bingo. Each letter reaffirms the State and Federal Governments' recognition of the Council as the gov-

erning body of the tribe and, in the case of the letter from the Federal official, expresses the view that commercial gambling activities on tribal lands are unlawful.

Berkey averred that the Council had specifically designated four individuals as agents of the tribe to enforce its antigambling law; that one of the named defendants, Neil Patterson, was a member of that designated group; that those designees were further authorized to designate other tribe members to assist them in enforcing tribal law, and that all five of the named defendants had been so designated. Based on the allegation that all named defendants had been deputized to act as agents of the tribe in this matter, Berkey argued that plaintiffs' motion for a preliminary injunction should be denied and their complaint dismissed based on the grounds of sovereign immunity and lack of subject matter jurisdiction. Attached to the Berkey affidavit was a record of proceedings before the Council of Chiefs, dated June 10, 1987, which contained resolutions outlawing bingo, designating individual members of the tribe to enforce that law, and empowering those individuals to delegate their enforcement powers to other individuals.

The court granted plaintiffs' motion for a preliminary injunction pending the determination of their action. The order restrained "Defendants, their agents and all other persons having notice of this injunction and acting in concert with the named Defendants" from interfering with the normal flow of pedestrian and vehicle traffic to and from the residence, bingo hall, and gas station and from "engaging in all and any acts of confrontation or altercation with either employees or business patrons" of those businesses. However, the order expressly permitted six persons to picket plaintiffs' premises during normal business hours. In its decision, the court found that, under 25 USC § 233, it had subject matter jurisdiction over this dispute "between Indians". In rejecting defendants' sovereign immunity defense, the court stated, "[T]he issuance of an injunction in this case should not be construed to diminish or impair the rights of self-government of the Tuscarora Tribe, nor should it be construed as an application of New York State tort laws to the conduct of Tuscarora government officials." The court impliedly found that plaintiffs had shown a reasonable likelihood of success on the merits, irreparable injury, and a balancing of equities in their favor, and held, "[A] temporary restraining order, here, will insure that the parties to this action may conduct their affairs without con-

frontation, disorderly blockage of entrances to plaintiffs' home and businesses and without breaches of the peace." The court specifically declined to find whether plaintiffs were conducting a bingo operation in contravention of a validly enacted tribal law, stating that was an issue which it would have to decide after a hearing.

## Attorney-General v Anderson and Chew

By notice of petition dated September 8, 1987, the Attorney-General commenced the second action, a special proceeding pursuant to Executive Law § 63 (12), seeking a preliminary and permanent injunction restraining respondents Joseph Anderson and Jerry Chew, the latter as president of the Tuscarora Warriors Council,[1] from operating the bingo hall. The petition alleged that the Council of Chiefs was the governmental authority of the tribe, that the Council had outlawed bingo, that the tribe had unsuccessfully attempted to enforce its law, that respondents' operation of the bingo hall was in direct violation of tribal law and that the Council had sought the assistance of the State in enforcing its law. It was alleged that, under tribal law, respondents' continued operation of the bingo hall constituted repeated illegal acts and persistent illegality in the carrying on, conduct, or transaction of business, which illegal acts could be enjoined pursuant to Executive Law § 63 (12).

The petition was supported by the affidavit of Chief Henry, who reiterated the statements contained in his affidavit submitted in the first action and referred to the two letters from the State and Federal Governments recognizing the Council of Chiefs. The petition was also supported by the affidavit of George Berger, a State Police lieutenant, who recited that police intervention had become necessary in response to the threat to public safety and smooth traffic flow presented by the escalating confrontations between the anti- and probingo factions.

In their answer, respondents denied that they were conducting their bingo operations illegally and, insofar as pertinent to this appeal, raised as affirmative defenses that the State lacks

---

1.    It is not clear what the relationship is between the Tuscarora Warriors Council and the Tuscarora Warriors Bingo Commission. The Attorney-General alleges that the latter is an "arm" of the former, but respondents deny it and admit only that the Bingo Commission operates the bingo games.

standing to enforce tribal law under Executive Law § 63 (12); that New York has no power under Federal law to regulate bingo on Indian lands; and that the Council of Chiefs does not have authority to outlaw gambling. Respondents moved to dismiss the petition. As a ground for dismissal, respondents argued that the State lacks standing to enforce tribal law under Executive Law § 63 (12). Respondents also argued that the court lacks subject matter jurisdiction of the dispute because the State is not a person within the meaning of 25 USC § 233, which grants jurisdiction only with respect to suits between Indians or between Indians and other "persons".

In opposition to the motion, the Attorney-General submitted the affidavit of Ross O. Swimmer, Assistant Secretary for Indian Affairs, United States Department of the Interior. Swimmer averred that the Council of Chiefs is recognized by the Federal Government as the lawful and exclusive legislative body of the tribe and that the Federal Government's policy on Indian bingo is that it is lawful only if conducted in accordance with tribal law.

On November 29, 1987, while the motion to dismiss was pending, the court granted the Attorney-General's motion for a temporary restraining order halting the bingo games. The motion was granted in response to reports of escalating tensions and specific incidents of violence at the site, including an attack upon Jerry Chew by one protestor and various fights between other protestors and bingo employees. Those incidents resulted in 12 arrests on one occasion and 14 arrests on another. On December 2, 1987, respondents moved to vacate the temporary restraining order as improvidently granted. In support of the motion to vacate, respondents submitted the affidavits of their attorney, respondent Anderson, Chief Webster Cusick, the tribe's representative to the Iroquois Confederacy, and Hattie Williams, Beaver Clan Mother. Insofar as pertinent to this appeal, those affidavits stated that the Council had not validly enacted an antibingo law in accordance with tribal custom; that the antibingo protestors were not acting as official representatives of the tribe; that the disturbances were caused by antibingo demonstrators, not by the conduct of the bingo games; and that a more appropriate means of keeping peace would be to regulate the conduct of the protestors rather than to shut down the bingo games.

The court did not decide plaintiffs' motion to vacate the temporary restraining order but on January 25, 1988 dismissed the Attorney-General's petition without prejudice to

the tribe's commencing an action in its own name against the bingo operators. The court held that the Attorney-General's standing to enjoin illegal acts under Executive Law § 63 (12) was limited to suits to enforce State law, and specifically held that "[t]he illegality referred to in Executive Law § 63 (12) does not contemplate proceedings to obtain an injunction restraining the conduct of a business based on a violation of an Indian tribal law." The court further held that the State is not a person under 25 USC § 233 and Indian Law § 5 and that the court thus lacked subject matter jurisdiction over the action.

## The Attorney-General Lacks Standing

■ We first address the propriety of the court's dismissal of the Attorney-General's petition against the bingo operators. Of the grounds relied on by the court, we find it necessary to discuss only one. We conclude that the Attorney-General lacks standing to enjoin conduct which is illegal under the laws of the quasi-sovereign Tuscarora Nation, although we disagree with the court's unduly broad holding that the Attorney-General has standing only to enjoin violations of State law. The Attorney-General's standing to enforce tribal law is apparently an issue of first impression. Executive Law § 63 (12) provides, in pertinent part, "Whenever any person shall engage in repeated fraudulent or illegal acts or otherwise demonstrate persistent fraud or illegality in the carrying on, conducting or transaction of business, the attorney general may apply, in the name of the people of the state of New York, to the supreme court of the state of New York, on notice of five days, for an order enjoining the continuance of such business activity or of any fraudulent or illegal acts * * * The term 'persistent fraud' or 'illegality' as used herein shall include continuance or carrying on of any fraudulent or illegal act or conduct. The term 'repeated' as used herein shall include repetition of any separate and distinct fraudulent or illegal act, or conduct which affects more than one person." The Attorney-General does not allege an illegality under New York law, but attempts to enjoin the bingo games as a persistent violation of the law of the Tuscarora tribe. However, the cases relied upon by the Attorney-General involve instances in which the conduct sought to be enjoined, penalized, or investigated constituted a violation of State, municipal, or Federal law or regulations (State of New York v Princess Prestige Co., 42 NY2d 104, 106; Matter of La Belle

*Creole Intl. v Attorney-General of State of N. Y.,* 10 NY2d 192, 197; *State of New York v Winter,* 121 AD2d 287, 288; *Matter of State of New York v Intercounty Mortgagee Corp.,* 87 AD2d 748, 749, *appeal dismissed* 57 NY2d 954; *Matter of State of New York v Scottish-American Assn.,* 52 AD2d 528, *mot to dismiss appeal granted* 39 NY2d 1057; *Matter of People v Calogero Corp.,* 47 AD2d 741; *Matter of Lefkowitz v E.F.G. Baby Prods. Co.,* 40 AD2d 364, 367; *Matter of Lefkowitz v Burden,* 22 AD2d 881; *State of New York v Stevens,* 130 Misc 2d 790, 791; *State of New York v Camera Warehouse,* 130 Misc 2d 498, 499; *State of New York v Solil Mgt. Corp.,* 128 Misc 2d 767, 769, *affd* 114 AD2d 1057, *lv denied* 67 NY2d 606). Significantly, the Attorney-General is unable to cite any instance in which Executive Law § 63 (12) has been used to enjoin, penalize, or investigate a violation of either tribal law or, analogously, the law of a sister State. Although the Attorney-General argues that his standing to enforce Federal law is no different from his standing to enforce tribal law, we disagree. The State's power, indeed, its obligation, to enforce Federal law under the Supremacy Clause is quite distinct from its assertion of power to enforce the laws of a separate sovereign or quasi-sovereign *(see, Testa v Katt,* 330 US 386, 389).

Intimately related to the determination of the Attorney-General's standing is an analysis of the State's power and interest in regulating gambling on Indian lands. The Supreme Court has recently held that, in the absence of specific Federal enabling legislation, the State has no authority to enforce its civil regulatory laws on Indian reservations and, in particular, has no authority to regulate bingo on the reservation *(California v Cabazon Band of Indians,* 480 US 202, — - —, 107 S Ct 1083, 1091-1095). Although the Attorney-General argues that there is a distinction between a State's power to enforce its own laws to regulate Indian bingo and its power to enforce Indian law outlawing bingo, that is a distinction without a difference. In each, case, the State is asserting an interest in regulating Indian bingo, a subject which the Supreme Court has determined is not a legitimate focus of State power *(California v Cabazon Band of Indians, supra).*

### The Action Is Not Barred by Sovereign Immunity and the Court Has Subject Matter Jurisdiction

In challenging the order granting the bingo operators a

preliminary injunction in their action against the protestors, defendants contend that, because they are duly designated agents of the tribal government appointed to enforce tribal law, they are immune from suit under the doctrine of sovereign immunity. As a corollary, they argue that because the suit would impermissibly impinge upon the governmental functions of the Tuscarora Nation, the court lacks subject matter jurisdiction under 25 USC § 233 and Indian Law § 5.[2] Neither claim can be resolved in defendants' favor at this stage of the action.

Defendants have not yet established that the tribe has a validly enacted antigambling law, that the Council of Chiefs is the proper legislative body of the tribe, that defendants are duly designated law enforcement officials, or that defendants were acting in that capacity in interfering with the bingo operation. Plaintiffs contested all of those claims and the court expressly declined to decide whether defendants were acting under authority of a validly enacted tribal law, postponing that determination pending trial of the injunction action. Since the issue whether defendants are valid agents of the tribal government remains an open question, there is no basis for dismissing the suit at this stage based on defendants' assertion of sovereign immunity. If it is determined that the officials were acting beyond the scope of their tribal authority or acting other than in their representative capacity, suit against those officials would not be barred by their assertion of the tribe's sovereign immunity (*Snow v Quinault Indian Nation,* 709 F2d 1319, 1321, *cert denied* 467 US 1214; *Babbitt Ford v Navajo Indian Tribe,* 519 F Supp 418, 425, *mod on other grounds* 710 F2d 587, *cert denied* 466 US 926; *see, Larson v Domestic & Foreign Corp.,* 337 US 682, 689). The test is " 'whether the relief sought in a suit nominally addressed to the officer is relief against the sovereign' " (*Babbitt Ford v Navajo Indian Tribe, supra,* at 424, quoting *Larson v Domestic & Foreign Corp., supra,* at 687).

---

**2.** 25 USC § 233 provides, in pertinent part: "The courts of the State of New York under the laws of such State shall have jurisdiction in civil actions and proceedings between Indians or between one or more Indians and any other person or persons to the same extent as the courts of the State shall have jurisdiction in other civil actions and proceedings, as now or hereafter defined by the laws of such State."

Indian Law § 5 provides: "Any action or special proceeding between Indians or between one or more Indians and any other person or persons may be prosecuted and enforced in any court of the state to the same extent as provided by law for other actions and special proceedings."

As pleaded by plaintiffs and treated thus far by the court, this action is not against the tribe or its duly authorized law enforcement officials. Plaintiffs brought this action against 5 named individuals and at least 150 unnamed individuals alleging tortious interference with plaintiffs' business by acts and threats of violence, intimidation, disorderly conduct, and defamation. The acts alleged are not the acts of law enforcement officials and the harm sought to be prevented, disruption of an ongoing business, is not a legitimate law enforcement effort. Thus, at this stage, it appears that plaintiffs' action is a private civil claim by Indians against Indians. Such claim is within the contemplation of 25 USC § 233 and Indian Law § 5, which give the State courts subject matter jurisdiction over private civil litigation "between Indians * * * to the same extent as the courts of this State shall have jurisdiction in other civil actions and proceedings" (Oneida Indian Nation v Burr, 132 AD2d 402, 404, 408; Matter of Anichinapeo v Bennett & Sons, 65 AD2d 105, cert denied 444 US 830; see, Bryan v Itasca County, 426 US 373, 383-385 [interpreting analogous provision of 28 USC § 1360 (a)]). It is clear that the court understood the action to be a private civil dispute since nothing in its order circumscribes the tribe's sovereign functions. Indeed, the decision expressly states, "[T]he issuance of an injunction in this case should not be construed to diminish or impair the rights of self-government of the Tuscarora tribe, nor * * * [to circumscribe] the conduct of Tuscarora government officials." Since the preliminary injunction issued to plaintiffs was not obtained against the sovereign (Larson v Domestic & Foreign Corp., supra, at 687), the relief is not barred by the doctrine of sovereign immunity.

### The Preliminary Injunction Was Properly Granted

■ Based on the grounds for dismissal which they urge, defendants contend that plaintiffs cannot show a likelihood of success on the merits. Moreover, defendants challenge the court's implicit findings that plaintiffs would suffer irreparable harm if a preliminary injunction were not granted and that the equities weigh in plaintiffs' favor (Tucker v Toia, 54 AD2d 322, 324). We reject defendants' contentions and conclude that the court did not abuse its discretion in awarding plaintiffs a preliminary injunction (R & J Bottling Co. v Rosenthal, 40 AD2d 911, 912).

It is far from certain that defendants will prevail on their defenses of sovereign immunity and lack of subject matter jurisdiction. Moreover, plaintiffs established that defendants have interfered with business at both the bingo hall and the gas station by acts of violence, provocation, and intimidation. Thus, there is no merit to defendants' claim that plaintiffs have not shown a likelihood of success on the merits. Additionally, plaintiffs showed that they would suffer immediate and irreparable harm absent injunctive relief. It is likely that defendants' interference with plaintiffs' businesses could not adequately be compensated by monetary damages because of the difficulty in proving how many individuals would have been deterred from patronizing those businesses as a direct result of defendants' conduct *(see, Wolf St. Supermarkets v McPartland,* 108 AD2d 25, 31, *appeal dismissed* 65 NY2d 785). Plaintiff should not be required to suffer further economic harm by loss of goodwill and patronage during the pendency of the action *(Social Spirits v Town of Colonie,* 70 AD2d 1036, 1038). Moreover, plaintiffs demonstrated an immediate threat to their physical safety and that of their employees, injuries which potentially could be irreparable. Finally, the court did not err in finding that the equities favored plaintiffs. Plaintiffs showed that the violent confrontations were primarily the result of defendants' picketing tactics and that the conduct of the bingo games was peaceful. Defendants have shown no injury as a result of the injunction, so it cannot be said that the harm to defendants as a result of the injunction outweighs the potential harm to plaintiffs absent an injunction. The court's order allowing six picketers during normal business hours and prohibiting other acts of interference with plaintiffs' businesses was a reasonable accommodation of the interests of the parties.

Accordingly, the orders appealed from in both actions should be affirmed.

DOERR, J. P., BOOMER, PINE and DAVIS, JJ., concur.

In the first entitled action, order and judgment unanimously affirmed, without costs.

In the second entitled action, order unanimously affirmed, without costs.