[740 NYS2d 733]

SARATOGA COUNTY CHAMBER OF COMMERCE, INC., et al., Respondents, v GEORGE PATAKI, as Governor of the State of New York, et al., Appellants. (Action No. 1.)

KEITH L. WRIGHT et al., Respondents, v GEORGE PATAKI, as Governor of the State of New York, et al., Appellants. (Action No. 2.)

Third Department, May 2, 2002

### APPEARANCES OF COUNSEL

*Eliot Spitzer, Attorney General,* Albany (*Andrew D. Bing* of counsel), for appellants.

*O'Connell & Aronowitz,* Albany (*Cornelius D. Murray* of counsel), for Saratoga County Chamber of Commerce Inc. and others, respondents.

*Jay Goldberg,* New York City, for Keith L. Wright and others, respondents.

### OPINION OF THE COURT

MERCURE, J.P.

The question on this appeal is whether, as the result of the interaction of gaming policies established by the State's Constitution and statutes and federal law, defendant Governor had the authority to execute a Tribal-State compact and amendment with the St. Regis Mohawk Tribe (hereinafter Tribe), allowing certain class III gaming activities on the Tribe's reservation. We hold that because the basic policy decisions underlying the Governor's action have not been made by the State Legislature, the Governor did not have the authority to bind the State by executing the compact or the amendment.

The Indian Gaming Regulatory Act (25 USC § 2701 *et seq.* [hereinafter IGRA]) was enacted in 1988 for the declared purpose of "provid[ing] a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments" (25 USC § 2702 [1]), while at the same time "provid[ing] a statutory basis for the regulation of gaming by an Indian tribe adequate to shield it from organized crime and other corrupting influences, to ensure that the Indian tribe is the primary beneficiary of the gaming operation, and to assure that gaming is conducted fairly and honestly by both the operator and players" (25 USC § 2702 [2]). Under IGRA, gaming is divided into three categories. Class III gaming, which is at issue here, is statutorily defined as "all forms of gaming that are not class I gaming or class II gaming" (25 USC § 2703 [8]) and

includes pari-mutuel horse race wagering, lotteries, banking card games such as baccarat, chemin de fer, and blackjack, and electronic or electromechanical facsimiles of any game of chance or slot machines of any kind (25 USC § 2703 [7] [B]; *see, Hotel Empls. & Rest. Empls. Intl. Union v Davis*, 21 Cal 4th 585, 596, 981 P2d 990, 998).

Pursuant to IGRA, Class III gaming activities will be permitted on Indian lands if "located in a State that permits such gaming for any purpose by any person, organization, or entity * * * and conducted in conformance with a Tribal-State compact entered into by the Indian tribe and the State" (25 USC § 2710 [d] [1] [B], [C]; *see, Rumsey Indian Rancheria of Wintun Indians v Wilson*, 64 F3d 1250, 1256, amended 99 F3d 321, *cert denied sub nom. Sycuan Band of Mission Indians v Wilson*, 521 US 1118). Further, as we held on a prior appeal in this case, we look to state law rather than IGRA to determine whether a state has validly bound itself to a compact (275 AD2d 145, 157). In 1993, then-Governor Mario Cuomo entered into a Tribal-State compact with the Tribe, which allowed the Tribe to operate gambling casinos. The Tribe opened the Akwesane Mohawk Casino on its reservation near Hogansburg in Franklin County on April 10, 1999. On May 27, 1999, the Governor and the Tribe entered into an amendment to the compact to permit the operation of electronic gaming devices, and the Tribe began the operation of these devices the following day.[1]

These actions were commenced in September 1999. The complaints allege in pertinent part that the Governor lacked authority to execute the compact or the amendment[2] and that the types of gambling contemplated by both of them are prohibited by the NY Constitution, criminal statutes, and public policy as enunciated by the Legislature. It is important to note that plaintiffs do not seek to shut down the Tribe's casino located on the Akwesane reservation insofar as it is operated in accordance with the original compact. Plaintiffs do seek to prevent any expansion of the casino operation pursuant to the amendment, including the expansion of the gambling activity

---

1. We are advised that the amendment expired by its own terms on May 27, 2000, that the State and the Tribe were unsuccessful in negotiating a substitute provision satisfactory to the Secretary of the Interior, but that the electronic gaming devices continue in operation.

2. Hereinafter, when the context of our discussion requires no distinction between the 1993 compact and the 1999 amendment, the two will be collectively referred to as the compact.

onto other sites. On the prior appeal, we denied defendants' motions to dismiss the complaints for failure to join an indispensable party, lack of standing or legal capacity to sue, or as barred by the doctrine of federal preemption, the applicable statute of limitations, or laches (275 AD2d 145, *supra*). Plaintiffs and defendants thereafter moved for summary judgment. Concluding that, absent legislative concurrence, the Governor's execution of the compact violated the doctrine of separation of powers, thereby rendering it void and unenforceable, Supreme Court denied defendants' motion and granted plaintiffs' motions. Defendants appeal.

We affirm. Fundamentally, "[t]he constitutional principle of separation of powers, implied by the separate grants of power to each of the coordinate branches of government, requires that the Legislature make the critical policy decisions, while the executive branch's responsibility is to implement those policies" (*Bourquin v Cuomo*, 85 NY2d 781, 784 [internal quotation marks and citations omitted]; *see, Cohen v State of New York*, 94 NY2d 1, 11; *Matter of New York State Health Facilities Assn. v Axelrod*, 77 NY2d 340, 349). Thus, although "there need not be a specific and detailed legislative expression authorizing a particular executive act as long as 'the basic policy decisions underlying the [executive action] have been made and articulated by the Legislature'" (*Bourquin v Cuomo*, *supra* at 785, quoting *Matter of New York State Health Facilities Assn. v Axelrod*, *supra* at 348), "when the Executive acts inconsistently with the Legislature, or usurps its prerogatives, * * * the doctrine of separation is violated" (*Clark v Cuomo*, 66 NY2d 185, 189; *see, Bourquin v Cuomo*, *supra* at 785; *Boreali v Axelrod*, 71 NY2d 1; *Rapp v Carey*, 44 NY2d 157).

The initial task, then, is to ascertain New York's legislative policy on gambling as it existed in the 1990s. Pursuant to NY Constitution, article I, § 9, the only forms of gambling authorized in New York are (1) State-operated pari-mutuel betting on horse races (NY Const, art I, § 9 [1]), (2) lotteries operated by the State, "the net proceeds of which shall be applied exclusively to or in aid or support of education" (NY Const, art I, § 9 [1]), and (3) specified "games of chance" conducted only by "bona fide religious, charitable or non-profit organizations of veterans, volunteer fire[fighters] and similar non-profit organizations," and then only if authorized by a majority vote of the electors of the city, town or village in which the gambling is to take place and on the additional conditions that the entire net proceeds be exclusively devoted to the lawful purposes of

the organizations and that prizes be limited to $250 for a single prize or $1,000 for a series of prizes (NY Const, art I, § 9 [2]). Notably, NY Constitution, article I, § 9 (2) requires the Legislature to "pass appropriate laws to effectuate [its purposes], ensure that [the games of chance] are rigidly regulated to prevent commercialized gambling, [and] prevent participation by criminal or other undesirable elements and the diversion of funds from the [authorized purposes]."

The stated purpose of General Municipal Law article 9-A, which the Legislature enacted pursuant to that constitutional directive, is expressed in the following terms:

> "It is hereby declared to be the policy of the legislature that all phases of the supervision, licensing and regulation of games of chance and of the conduct of games of chance * * * should be closely controlled and that the laws and regulations pertaining thereto should be strictly construed and rigidly enforced; that the conduct of the game and all attendant activities should be so regulated and adequate controls so instituted as to discourage commercialization of gambling in all its forms * * * and that the mandate of [NY Constitution, article I, § 9] should be carried out by rigid regulations to prevent commercialized gambling * * *" (General Municipal Law § 185).

Under the circumstances, we conclude that the commercialized Las Vegas style gambling authorized by the compact is the antithesis of the highly restricted and "rigidly regulated" (NY Const, art I, § 9 [2]) forms of gambling permitted by the NY Constitution and statutory law and New York's established public policy disfavoring gambling (*see*, *Ramesar v State of New York*, 224 AD2d 757, 759, *lv denied* 88 NY2d 811; *accord*, *Matter of New York Racing Assn. v Hoblock*, 270 AD2d 31, 33-34).

Obviously recognizing that its defense to plaintiffs' separation of powers claim is seriously undermined by New York's long-standing and clearly articulated policy against precisely the type of gambling that the compact authorizes, defendants' primary approach has been to enlist IGRA as evidence of a purported New York policy favoring commercialized casino gambling. Reduced to its essence, defendants' argument is that, because the NY Constitution, statutes and implementing regulations permit every form of gambling authorized by the compact, albeit under rigid controls and limitations not in exis-

tence at the Tribe's casino, the "permits such gaming for any purpose by any person, organization, or entity" criterion of 25 USC § 2710 (d) (1) (B) is satisfied. That being the case, the argument continues, if the Governor had refused to enter into good-faith negotiations culminating in a Tribal-State compact, IGRA would have authorized the United States Secretary of the Interior to impose a compact on the State (*see*, 25 USC § 2710 [d] [7]; 25 CFR part 291; *see also*, *Mashantucket Pequot Tribe v State of Connecticut*, 913 F2d 1024, 1032, *cert denied* 499 US 975; *Yavapai-Prescott Indian Tribe v State of Arizona*, 796 F Supp 1292, 1297-1298). Even accepting these two underlying premises as true, which we do only for the sake of the present argument, we conclude that defendants' argument is nonetheless fatally flawed.

First and most obvious is the fact that the Governor and Congress are not coordinate branches of government, thereby rendering defendants' separation of powers analysis inapt (*see*, NY Const, art III, § 1; art IV, § 1; *see also*, *Clark v Cuomo*, 66 NY2d 185, 189, *supra*). Although defendants make an attempt to promote this as a "unique" separation of powers case where the challenged executive action supposedly implements existing legislative policy "established through the interplay of policies set by two policy-making bodies—the New York State Legislature and the United States Congress," the fact is that the policy relied upon by defendants derives solely from federal statutes and implementing regulations. The State Legislature's exclusive role in this matter was to approve highly restrictive statutes and constitutional provisions which, although generally banning gambling and at all times evidencing a strong policy against commercialized gambling, may have unwittingly opened the door to Indian casino gaming through the subsequently enacted IGRA.

Second, defendants' analysis overlooks the critical distinction between the *existence* of a Tribal-State compact and the *provisions* of such a compact. That is, even if we were to accept the premise that IGRA placed the State in a position where it had no reasonable alternative but to enter into a compact with the Tribe, the fact remains that the Governor lacked authority to define the terms of that compact. As the legislative history of IGRA makes clear, "[a] State's governmental interests with respect to class III gaming on Indian lands include the interplay of such gaming with the State's public policy, safety, law and other interests, as well as impacts on the State's regulatory system, including its economic interest in raising

revenue for its citizens" (S Rep No. 44, 100th Cong, 2d Sess, at 13, reprinted in 1988 US Code Cong & Admin News, at 3071, 3083). Here, the Governor's action deprived the Legislature of any input concerning a number of significant elements, including the location of the casino, the gaming that could be carried on there, the extent of state involvement in providing regulation and a regulatory infrastructure and the fees to be exacted for that regulation (see, *Yavapai-Prescott Indian Tribe v State of Arizona, supra* at 1296-1297). These numerous collateral issues affecting the health and welfare of state residents implicate policy choices lying squarely within the province of the Legislature.[3]

As a final matter, we note that defendants expressly disavow any opinion as to whether (1) under IGRA, New York must allow "all forms of Indian gaming" because some types of class III gaming are allowed, (2) IGRA preempted the question of whether the Governor's signature was sufficient to bind the State, and (3) the Legislature ratified the compact by appropriating funds for its implementation and granting the State Police access to the criminal history records of the Division of Criminal Justice Services.

The parties' remaining contentions either need not be addressed or have been considered and found to be unavailing.

PETERS, SPAIN, CARPINELLO and LAHTINEN, JJ., concur.

Ordered that the order is affirmed, with one bill of costs.

---

**3.** As we indicated in our prior decision in this case, it is noteworthy that a number of other jurisdictions have considered the question of whether a governor has the authority to bind a state to an Indian gaming compact, and in every state whose constitution does not grant residual powers to the executive, the litigation resulted in a declaration that the compact is void and unenforceable absent legislative concurrence (see, *Jicarilla Apache Tribe v Kelly,* 129 F3d 535, 537 [NM]; *Kickapoo Tribe of Indians v Babbitt,* 827 F Supp 37, 46 [Kan], *revd on other grounds* 43 F3d 1491; *McCartney v Attorney General,* 231 Mich App 722, 727-728, 587 NW2d 824, 827, *lv denied* 460 Mich 873, 601 NW2d 101; *Narragansett Indian Tribe v State,* 667 A2d 280, 282 [RI]; *State ex rel. Clark v Johnson,* 120 NM 562, 574, 904 P2d 11, 23; *State ex rel. Stephan v Finney,* 251 Kan 559, 582-583, 836 P2d 1169, 1185).