CATSKILL DEVELOPMENT, L.L.C., Mohawk Management, L.L.C., and Monticello Raceway Development Company, L.L.C., Plaintiffs,

v.

PARK PLACE ENTERTAINMENT CORPORATION, Defendants.

No. 00 CIV.8660(CM)(GAY).

United States District Court,
S.D. New York.

May 8, 2002.

Thomas P. Puccio, New York City, for Catskill Development, L.L.C., plaintiff.

John P. Gallagher, Stites & Harbison, Atlanta, GA, Bethany A. Breetz, Stites & Harbison, Louisville, KY, for Catskill Development, L.L.C., Mohawk, L.L.C., Monticello Raceway Development Company, L.L.C., plaintiffs.

Herbert F. Kozlov, Reed Smith LLP, New York City, for Catskill Development.

Herbert F. Kozlov, Parker, Duryee, Rosoff & Haft, New York City, for Mohawk Management, L.L.C., Monticello Raceway Development Company, L.L.C.,

William W. Hopson, J.D. Humphries, III, Stites & Harbison, PLLC, Atlanta, GA, for Mohawk Management, L.L.C., plaintiff.

J.D. Humphries, III, Stites & Harbison, PLLC, Atlanta, GA, for Monticello Raceway Development Company, L.L.C., plaintiff.

David Boies, Boies, Schiller & Flexner, L.L.P., Armonk, NY, for Park Place Entertainment Corporation, defendant.

## MEMORANDUM DECISION AND ORDER DENYING PLAINTIFFS' MOTION TO RENEW

MCMAHON, District Judge.

On February 20, 2002, this Court partially overturned an order to quash certain deposition subpoenas. *Catskill Development, L.L.C. v. Park Place Entertainment Corp.*, 206 F.R.D. 78 (S.D.N.Y.2002). Insofar as is pertinent to the present application, the Court refused to overturn the order quashing the subpoena addressed to Angus McDonald, the Executive Director of the St. Regis Mohawk Tribe, on the ground that plaintiffs had not demonstrated that Mr. McDonald was an official or agent of the St. Regis Mohawk Gaming Authority, the entity within the St. Regis

Mohawk Tribe that had waived sovereign immunity in the various agreements that are at the center of this action for inducing breach of contract.

On April 17, 2002—almost two months after this Court's decision was rendered, and well beyond the ten days permitted by Local Rule 6.3 of this Court for filing motions for reconsideration—plaintiffs filed a "motion to renew" (a form of motion recognized by New York State's Civil Practice Law and Rules, but nowhere mentioned in the Federal Rules of Civil Procedure). Plaintiffs allege that information developed during the depositions the Court did permit—those of Chiefs Ransom and Smoke, who were clearly officers of the St. Regis Mohawk Gaming Authority— revealed that almost all the substantive action taken on behalf of the Gaming Authority was taken by McDonald. Plaintiffs further allege that certain documents recently made available to them, including the Charter of the Gaming Authority, reinforce the need to depose McDonald, due to the "expansive range of authority delegated [to the Gaming Authority] by the Mohawk Tribe to manage all of the Tribe's gaming activities." (Moving Brief at 2).

Park Place opposes the application because it is untimely. It points out that documents detailing McDonald's role in negotiations with Park Place were made available to plaintiffs no later than August 16, 2001. Obviously, the information from those documents could have been made available to the Court in connection with the original motion to quash—or, at the very latest, within ten days after the Court indicated that McDonald's role in the activities of the Gaming Authority had not been spelled out sufficiently. Park Place also notes that the Charter of the Gaming Authority should have been obtained by plaintiffs far earlier than last month—and could have been, given the close alliance between plaintiffs and the faction of the St.

Regis Mohawk Tribe that was apparently the source of the charter.

The Tribe opposes the application, urging that McDonald was acting as an official of the Tribe, not of the Gaming Authority (the entity that explicitly waived the Tribe's sovereign immunity), when he did whatever he did in connection with the Park Place negotiations. It points out that the Charter limits the Gaming Authority's activities to Monticello, New York, which is not where the St. Regis Mohawk Tribe ultimately elected to locate its casino. And it argues that the Gaming Authority was actually dissolved a mere sixty days after it came into being.

I deny the motion for reconsideration. The documents and testimony submitted to me do not clarify Angus McDonald's role in the conduct of the affair of the Gaming Authority. In my February 20 opinion, I did not rule that plaintiffs had failed to show that McDonald participated in discussions; I ruled that plaintiffs had failed to show that McDonald had any connection to the Gaming Authority. The documents appended to plaintiff's motion—all of which could have been made available to the Court either in opposition to the original motion to quash or on a timely motion for reconsideration—do not set forth Mr. McDonald's role in Gaming authority, as opposed to Tribal, affairs. The deposition testimony of Chiefs Ransom and Smoke, which allegedly establishes the basis for me to reconsider my prior ruling, also does not shed any light on that discrete question. It establishes only that McDonald attended some meetings and received some written communications with Park Place officials. The fact that Chief Ransom responded to one of the many questions she was asked by suggesting that the questioner ask "Gus" (Mr. McDonald) does not establish Mr. McDonald's relationship to the Gaming Au-

thority either. All it proves is that Chief Ransom may not have been as knowledgeable about the Tribe's casino dealings as plaintiffs would have hoped. In this regard, I note that Chief Ransom responded to a number of questions directed to her by suggesting that the other chiefs should be asked because, "I don't know gaming."

I am unmoved by the Tribe's argument that the reference to "Monticello, New York" in Section 1 of the Gaming Authority's Charter limits the activities of the Gaming Authority to a casino to be located in that municipality. There are numerous other references in the document to the "Property" on which the "Enterprise" (i.e., a duly authorized commercial gaming enterprise of the Authority) is to be located. In every such instances, the "Property" is defined only as being located in Sullivan County—a county that includes Monticello but is not limited to Monticello. I further note that Tribal Resolution 96–22, which authorized the creation of the Gaming Authority describes the purpose of the Authority as the management of "the day-to-day operations of a gaming facility in Sullivan County," not Monticello.

However, the Charter also delegates extensive powers to the "Management Board." McDonald is not a member of that Board, and plaintiff's counsel did not establish through questioning at the depositions of Chiefs Ransom and Smoke that McDonald was either a member of that Board or that he operated as an agent of the Management Board in its dealings with anyone. Therefore, the necessary nexus between McDonald and the Gaming Authority has not been established to my satisfaction.

In 1996, when the original charter of the St. Regis Mohawk Gaming Authority was adopted, the Tribe determined to conduct its affairs relating to casino development in Sullivan County through the Authority. This Authority, and the resolutions pursu-

ant to which it was created, were the work of a Tribal Council that now competes with the Three Chiefs (Park Place's allies, and the subjects of plaintiffs' deposition subpoenas) for control of the Tribe's governance and its potentially lucrative gaming opportunities. The Three Chiefs, representing the pro-defendant faction of the Tribe, appear to be by-passing the Gaming Authority as a development vehicle—no doubt because it was chartered by the enemy faction within the Tribe. For example, it appears to me that Park Place entered into its agreement with the Tribe, not with the Gaming Authority. It is thus quite possible that McDonald, who was not a member of the Management Board when the Authority was established, could have had dealings with defendant that were not undertaken on behalf of the Authority. Plaintiffs have had ample opportunity to make the case that he so acted; they have failed to adduce any proof. This matter will not be revisited.

On another matter entirely, I trust that in the upcoming summary judgment motion papers the parties will address the recent decision of the Appellate Division, Third Department, in which the Appellate Division affirmed Judge Teresi's order declaring that the Governor of the State of New York has no power to negotiate and enforce compacts with Indian tribes to facilitate casino development without legislative approval. *Saratoga County Chamber of Commerce Inc. v. Pataki,* 740 N.Y.S.2d 733 (N.Y.A.D. 3d Dept.2002).