OPINION OF THE COURT
Dennis F. Bender, J.
This court has multiple applications in front of it. The named plaintiffs are individual Cayuga Indians, a Cayuga Nation enterprise, and purportedly, the Cayuga Nation itself. The named defendants, as well as presumably the “John Does,” are also all individual Cayuga Indians. The complaint alleges causes of action for trespass, conversion, tortious interference with prospective business relations, replevin and ejectment. All of the actions revolve around an alleged illegal “take over” of the Nation’s offices, its two Lakeside Trading Facilities, and its 154-acre farm, on April 28, 2014.
The plaintiffs request a determination that trespass, conversion, and tortious interference occurred, and seek an order directing the defendants and their agents to immediately vacate the properties and surrender personal property taken. They further ask that the defendants and their agents be preliminarily and permanently enjoined from entering the properties, exercising any control over personal property at the locations, and from taking any action to disrupt the commercial activities of the Nation or its affiliates.
An order to show cause was issued by this court which included a temporary restraining order against the defendants.
The plaintiffs subsequently brought a second application requesting the court to make some specific directions concerning service of the original order to show cause, and a third application seeking a finding of contempt upon the failure of the defendants to comply with the restraining order.
The defendants responded by moving to dismiss the complaint in its entirety on various grounds including, among others, that this court lacks subject matter jurisdiction pursuant to CPLR 3211 (a) (2), and that the court lacks personal jurisdiction over the individually named defendants pursuant to CPLR 3211 (a) (8), because they are all leaders of the Cayuga Nation acting in their official capacities and therefore may not be sued without their consent.
*391 Thereafter, Seneca County, in which this action was initiated, moved to intervene, seeking an order dismissing the action or directing its removal to the federal courts, and directing the Cayuga Nation to reimburse Seneca County for any costs incurred enforcing any orders which result from this action.
All matters were made returnable on May 16, 2014.[1]
At oral argument, the court first granted the pro hac vice applications of David W. DeBruin, Esq. and Joshua M. Segal, Esq. to appear on behalf of the plaintiffs, finding the requisite showing of good standing and said applicants’ familiarity with the standards of professional conduct within New York State was made pursuant to 22 NYCRR 520.11. It also granted Seneca County’s application to intervene.
Subject Matter Jurisdiction
The plaintiffs argue that this court has jurisdiction to determine the underlying civil causes of action pursuant to 25 USC § 233 and Indian Law § 5. “Although New York courts do not have subject matter jurisdiction over the internal affairs of Indian tribes (see Bowen v Doyle, 880 F Supp 99, 122-123), they do have subject matter jurisdiction over, inter alia, ‘private civil claims by Indians against Indians.’ ” (Seneca v Seneca, 293 AD2d 56, 58 [4th Dept 2002], quoting People v Anderson, 137 AD2d 259, 270 [4th Dept 1988].)
The plaintiffs’ argument has strong surface appeal. While questions of fact certainly exist regarding the specifics of the incidents of April 28, 2014, there is no question that the businesses and property involved are Cayuga Nation property, and it is not denied that the actions of the defendants disrupted business activity. It is no less evident that at least some of the defendants have no respect for this court’s temporary order *392 which would have maintained the previous status quo.[2] As counsel for the plaintiffs seem to suggest, it would seem to fly in the face of reason to argue that there is nothing this court can do.
Counsel for the plaintiffs further argue strenuously that this court does not need to resolve the issue of leadership of the Nation. Well detailed was the history, much undisputed, of the status of the individually named plaintiffs amongst the Nation’s ruling authorities, and their past and present involvement in the running of the Nation’s affairs. Much was also made of the history of Mr. Halftown as the recognized representative of the Nation for the United States Bureau of Indian Affairs (BIA).
Clearly however, this is not a simple case of “private civil claims of Indians against Indians,” and thus, contrary to plaintiffs’ counsel’s suggestion during oral argument, a ruling contrary to the plaintiffs does not mean that “anyone acting under color of Indian Law is entitled to take possession.” Although the plaintiffs argue that their causes of action are directed at individuals, the responding papers make clear, and the plaintiffs do not question, that three of the named defendants are council members and three others are clan mothers, all thus being in one capacity or another Cayuga Nation leaders.[3] It is equally evident that the plaintiffs’ contention is that the named defendants are orchestrating the actions of the “John Doe” defendants. Notably, there is a dearth of allegations regarding any direct involvement by any of the named defendants at any of the incidents.
The conceded underlying dispute between the factions regarding the proper identity of the Nation’s ruling council’s membership as well as the federal representative to the BIA is longstanding. While it appears that plaintiffs Halftown, Twoguns and Wheeler were at some point properly made members of the *393 ruling council, and that Halftown was properly appointed as the federal representative for dealings with the BIA, less clear is their current status. Alleged in the affidavit of defendant Samuel George is the assertion that in late May and early June of 2011, pursuant to Cayuga Law and custom, the clan mothers of the Cayuga Nation “reformed” the governing Nation Council, retaining three of the Council’s BIA-recognized members and removing and replacing plaintiffs Halftown, Twoguns, and Wheeler. (George aff ¶ 6.) The affidavit also sets forth, which is not in dispute, that Franklin Keel, the Director of the Eastern Region of the BIA, recognized that change in government, and found defendants Jacobs and George to be the federal representatives designated by the new Nation’s Council (Aug. 19, 2011 letter from the United States Department of Interior to Attorneys Daniel J. French, Lee Alcott and Joseph Heath, attached to defendants’ moving papers). Although that determination was later vacated (Cayuga Indian Nation of N.Y. v Eastern Regional Director, 58 IBIA 171 [2014]), such was on procedural grounds. Predicated upon the Interior Board of Indian Appeals’ (IBIA) curious determination that there were no pending issues between the Nation and the BIA, it stated it was not appropriate for the determination to be made. Further, even though the BIA has not recognized anyone other than Halftown as the representative of the Nation, the BIA has emphasized that his authority is defined and controlled by the Nation and not by the BIA. (George v Eastern Regional Director, 49 IBIA 164 [2009].)
Most recently, a letter dated May 15, 2014 was sent by Director Keel, which seeks presentations to the BIA by the two factions addressing whether “(1) . . . there are [now] matters pending before the Region . . . that . . . trigger the need for a decision as to who is the Nation’s federal representative; and (2) whom the region should recognize as the leadership of the Cayuga Nation.” The plaintiffs’ attorney made much of the fact the letter states that “the region will maintain the status quo with respect to the Cayuga Nation’s draw down authority.” Notably however, it was limited to the sole identified issue, and more important, the correspondence also states that the decision to do so “does not express any view recognizing either side.” That letter, as well as the above-cited decision of the IBIA vacating Mr. Keel’s previous decision on procedural grounds, hardly justifies the conclusion that Mr. Halftown or the other individually named plaintiffs retain legitimate authority to determine the Nation’s affairs.
*394 The question of who is in charge, and resultantly who has the authority to speak for the Nation and control its property and businesses, is thus the fundamental question that must be answered. Absent a preliminary determination of that question, no justiciable issue is capable of being addressed by this court.
The foregoing is not changed by the matter of Farrer v Piecuch (278 App Div 1011 [4th Dept 1951]), cited by the plaintiffs for the proposition that the leadership issue need not be decided to address the pending action. Because the plaintiffs have been in control of the properties for years, Farrer says they must prevail. In that case the Court held that because the respondents had enjoyed peaceable possession for many years of a parcel of real property, their failure to show title did not preclude an action in trespass where the appellants showed no better title themselves. The distinction of course is that here, by analogy, this court may not consider whether the defendants have “better title.”
Despite the foregoing, this court finds no authority which would justify the request of Seneca County that the matter be transferred to the Federal District Court of Western New York or to the Bureau of Indian Affairs for determination.
Because the underlying allegations in this lawsuit are fundamentally founded upon the long-standing question of who has the right to lead the Nation, no determination could be made by this court without interfering with tribal sovereignty and self-government. Accordingly, this court lacks subject matter jurisdiction of the preliminary question in the case. (Iowa Mut. Ins. Co. v LaPlante, 480 US 9, 15 [1987]; Bowen v Doyle, 880 F Supp 99 [WD NY 1995].)
Contempt
People v Anderson (137 AD2d 259 [4th Dept 1988]) is not dispositive. Like this case, Anderson dealt with the court’s authority to issue a preliminary injunction and temporary restraining order to maintain the status quo. In upholding that authority, the Court noted that the issue of leadership could not be determined on a preliminary basis, deferring that decision to the trial of the injunctive action. (Id. at 269.) Also as here, the action was brought not against the tribe, but against named and unnamed individuals. Despite those similarities, both parties here agree that as a matter of law, this court lacks authority to decide the issue of leadership. In any event, because this court finds it lacked subject matter jurisdiction when the initial order was made, the order was manifestly devoid of validity. Ac *395 cordingly, despite the actual contempt shown, this court cannot punish a violation of such order. (Matter of Schulz v State of New York, 86 NY2d 225, 232 [1995], cert denied 516 US 944 [1995]; Morrison v Budget Rent A Car Sys., 230 AD2d 253 [2d Dept 1997]; Matter of B.H. Children [Robert H.], 29 Misc 3d 161, 169-170 [Fam Ct, Kings County 2010].)
A sorry aspect of this matter is that the Cayuga Nation has a great deal of responsibility for this situation by its failure to set forth the specific requirements or procedure to change leadership within the Nation. While trumpeting its right of self-rule, as observed in the IBIA decision (George v Eastern Regional Director, 49 IBIA 164, 167 [2009]), the Nation “has no written law, court, or body other than the Council itself for resolving disputes . . . within the Council.” Counsel’s comment at oral argument that the law “resides in the hearts and minds of the Cayuga People” is, as this long-standing dispute shows, hardly conducive of rational adjudication. Reliance upon oral tradition and ruling by consensus, however that is defined by the Cayuga Nation, may have served the Nation well in pre-colonial or colonial times. It is clearly ill suited for the twenty-first century.
This court finally notes that counsel for the plaintiffs acknowledged that there is a civilized way to resolve this dispute, referencing the BIA’s letter of May 15, 2014. If sincere, it would behoove the named plaintiffs to agree with the defendants that intervention by the BIA is necessary, and specify what issues need to be resolved, including “whom should be recognized as the leadership of the Cayuga Nation.” Good leadership would likewise suggest that each side tell its followers that further confrontations pending resolution are counterproductive. It is evident that emotions are running high. A lack of a clear and unequivocal statement that confrontations are not countenanced by leadership will likely be viewed as tacit approval of further action by individuals which, sadly to date, has involved allegations of criminal activity.
The motions of the plaintiffs are denied and dismissed and the defendants’ motion for dismissal of the action due to the lack of subject matter jurisdiction is granted, without costs. Seneca County’s application to transfer the matter is also denied, and the ancillary relief requested by the county is denied as moot, and without addressing the propriety of it.

. For the first time, at oral argument, counsel for the defendants raised a question whether the summons in this matter had been filed or served upon his clients. This morning, Monday, May 19, 2014, he requested he be allowed to submit a four-page memorandum of law on that issue. The request was denied by the court. Nothing has been or was proposed to be presented under oath to support counsel’s claim, and the court notes a copy of the summons was attached to the copy of the complaint provided to the court with the first application. Both bore a time stamp from the County Clerk’s Office. While the challenge may very well have merit if the summons was not served, dismissal on that ground would have been without prejudice.

. Counsel for the defendants conceded the lack of compliance. When asked by what authority the order was ignored, counsel simply stated “Cayuga Law,” whatever that might mean.

. This also raises the issue of sovereign immunity. While it is not generally available to individuals, sovereign immunity does apply when the individuals are being named because of actions being taken in their apparent official capacities as council members. (41 Am Jur 2d, Indians; Native Americans § 9; Catskill Dev., LLC v Park Place Entertainment Corp., 206 FRD 78 [SD NY 2002], recons denied 204 F Supp 2d 647 [SD NY 2002].) The other individually named defendants also sit on the council according to the defendants, as either faith keepers or seatwarmers. (Exhibit A, defendants’ motion papers, Cayuga Nation Resolution 11-001.)