**KICKAPOO TRIBE OF INDIANS OF the KICKAPOO RESERVATION IN KANSAS, et al., Appellants**

v.

**Bruce BABBITT, in His Official Capacity as Secretary of the Interior, et al., Appellees.**

No. 93–5262.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 3, 1994.

Decided Jan. 13, 1995.

Glenn M. Feldman, argued the cause and filed the briefs for appellants. Munford P. Hall, entered an appearance for appellants.

Jonathan F. Klein, argued the cause for appellees. With him on the brief were Lois J. Schiffer, Acting Asst. Atty. Gen., Robert L. Klarquist and Edward J. Passarelli, Attys., U.S. Dept. of Justice. John A. Bryson, entered an appearance for appellees.

Before: WILLIAMS, GINSBURG, and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

The Kickapoo Tribe of Indians of the Kickapoo Reservation in Kansas appeals from the grant of summary judgment to the Secretary of Interior and the Assistant Secretary of Interior for Indian Affairs ("the Secretary"). The Tribe contends that the district court erred in ruling that, although a compact between the Tribe and the Governor of Kansas had been approved by operation of law under the Indian Gaming Regulatory Act ("Gaming Act"), 25 U.S.C. § 2710(d)(8)(C), the compact was nevertheless invalid because the Governor lacked the authority under state law to sign the compact on behalf of the State of Kansas. We conclude, in agreement with the Secretary, that the district court abused its discretion in denying the Secretary's motion to dismiss the complaint because Kansas was an indispensable party under Rule 19(b) of the Federal Rules of Civil Procedure. Accordingly, we reverse and remand with instructions to dismiss the complaint.

## I.

The Gaming Act authorizes Indian tribes and states to enter into "Tribal–State compacts" setting forth the terms under which a tribe may conduct certain forms of gambling on its reservation. 25 U.S.C. §§ 2701–21 (1988). A compact must be submitted to the Secretary of the Interior, who shall approve or disapprove it within forty-five days; if the Secretary fails to act within that period, the compact is deemed approved. *Id.* § 2710(d)(8)(C). Thereafter, the Secretary is required to publish notice of the approved compact in the Federal Register. *Id.* § 2710(d)(8)(D).

In January 1992, the Chairman of the Kickapoo Tribe of Indians of the Kickapoo Reservation in Kansas and the Governor of Kan-

sas entered into a compact authorizing Class III gambling on the Kickapoo Reservation in Kansas.[1] Shortly after the Tribe forwarded the compact to the Secretary of the Interior, the Attorney General of Kansas challenged the Governor's authority under Kansas law to negotiate and enter into the compact, by filing a petition for mandamus in the Supreme Court of Kansas. In the interim, in response to the Secretary's position that the compact did not comply with the Gaming Act, the Tribe and the Governor revised the compact on grounds unrelated to the Attorney General's lawsuit and resubmitted the compact to the Secretary. Because of the litigation brought by the Kansas Attorney General, however, the Secretary notified the Governor and the Tribe that the compact "had not been submitted as ... required by 25 U.S.C. § 2710(d)(8)," and that the Gaming Act's forty-five-day review period would be tolled until the Supreme Court of Kansas resolved the question of the Governor's authority.

The Tribe sued the Secretary seeking a declaratory judgment that the Secretary lacked authority to defer approval of the compact and that his failure to disapprove it within forty-five days resulted in approval of the compact as a matter of law. The Tribe also sought a writ of mandamus directing the Secretary to publish notice of the compact in the *Federal Register.* After the Supreme Court of Kansas interpreted state law as allowing the Governor to negotiate a compact under the Gaming Act but precluding the Governor from signing the resulting compact and thereby binding the State to its terms, *State ex rel. Stephan v. Finney,* 251 Kan. 559, 836 P.2d 1169, 1185 (1992), the Secretary moved to dismiss the Tribe's lawsuit on the ground that the State of Kansas was an indispensable party under FED.R.CIV.P. 19

not joined in the litigation. The Secretary also moved, in the alternative, for summary judgment on the ground that the Governor's lack of authority to enter into the compact rendered the compact a legal non-entity that could not constitute a valid submission to the Secretary and thus that the forty-five-day period under the Gaming Act had not commenced to run.

The district court denied the Secretary's motion to dismiss, ruling that the state legislature's failure to enter into a compact with the Tribe and the assumption that the Governor negotiated and signed the compact with "the best interests of the State in mind" meant that the State of Kansas was not an indispensable party and the litigation could proceed in its absence. *Kickapoo Tribe of Indians v. Babbitt,* 827 F.Supp. 37, 42–43 (D.D.C.1993). The district court thereafter granted summary judgment to the Secretary. While rejecting the Secretary's position that the Gaming Act permitted him to toll the statutory forty-five-day review period, and ruling that the compact was approved by operation of law, the district court concluded that the Governor's *ultra vires* action meant that the State of Kansas never lawfully entered into the compact and thus the compact was void. *Id.* at 44, 46.

## II.

Under FED.R.CIV.P. 19, whether a party is indispensable for a just adjudication requires a determination regarding whether the absent party is necessary to the litigation; if so, whether the absent party can be joined in the litigation; and if joinder is infeasible, whether the lawsuit can nevertheless proceed "in equity and good conscience." FED.R.CIV.P. 19;[2] *see Western Md. Ry. Co.*

---

1. Class III gaming includes all gaming, other than social games for minor prizes and bingo, and other comparable games, such as banking card games and "electronic or electromechanical facsimiles of any game of chance or slot machines of any kind." 25 U.S.C. § 2703(7)(B) & (8).

2. An absent party is necessary to the litigation under FED.R.CIV.P. 19(a) if:

 (1) in [the party's] absence complete relief cannot be accorded among those already par-

ties, or (2) [the party] claims an interest relating to the subject of the action and is so situated that the disposition of the action in [the party's] absence may (i) as a practical matter impair or impede [the party's] ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of [the party's] claimed interest.

*v. Harbor Ins. Co,* 910 F.2d 960, 961 (D.C.Cir.1990). The rule calls for a pragmatic decision based on practical considerations in the context of particular litigation.. *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 116–17 n. 12, 118, 88 S.Ct. 733, 741–42 n. 12, 742, 19 L.Ed.2d 936 (1968); WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D, § 1601, at 10, 14 (1986). We review the district court's determination that Kansas was not an indispensable party under Rule 19(b) for abuse of discretion. *Cloverleaf Standardbred Owners Ass'n. v. National Bank of Wash.,* 699 F.2d 1274, 1276 (D.C.Cir.1983).[3] In that regard, the court has acknowledged that the district court has "substantial discretion in considering which factors to weigh and how heavily to emphasize certain considerations in deciding whether the action should go forward." *Id.* at 1277 (citation omitted). We are, nevertheless, constrained to conclude that the district court abused its discretion in ruling that Kansas was not an indispensable party in the Tribe's lawsuit against the Secretary and that the trial could proceed in its absence. We reach this conclusion based on the nature of the issue before the district court in light of the immunity of the absent party and the district court's reliance on inappropriate factors.

Where an absent party cannot be made a party, FED.R.CIV P. 19(b) instructs the court to determine:

whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent [party] being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the [party's] absence might be prejudicial to [that party] or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the [party's] absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

3. The Secretary did not file a cross appeal from the denial of his motion to dismiss under Rule 19, but he argues in his brief that the denial was an abuse of discretion. The Tribe maintains that the failure to cross appeal precludes the Secretary from arguing that the district court abused its discretion in denying the Rule 19 motion.

## A.

The Tribe seeks to obtain the validation of a compact with the State of Kansas that the Supreme Court of Kansas has held was not approved by an official empowered to do so under state law. *State v. Finney,* 836 P.2d at 1184–85. Clearly, as the district court assumed, the State of Kansas has an interest in the validity of a compact to which it is a party, and this interest would be directly affected by the relief that the Tribe seeks. *Kickapoo Tribe,* 827 F.Supp. at 41; *Kansas v. Finney,* 836 P.2d at 1176, 1183 (noting fiscal and other effects of the compact on the State). Thus, Kansas is a necessary party under Rule 19(a).[4] *See Wichita & Affiliated Tribes,* 788 F.2d at 774; *Enterprise Management Consultants v. United States ex rel. Hodel,* 883 F.2d 890, 893 (10th Cir.1989). As a necessary party, Kansas should have been joined in the litigation if such joinder was feasible. FED.R.CIV.P. 19; *see also Western Md. Ry.,* 910 F.2d at 962–63.

One reason joinder may be infeasible is that the absent party enjoys sovereign immunity. *See Quileute Indian Tribe v. Babbitt,* 18 F.3d 1456, 1460 (9th Cir.1994). Even if that were so, *see Massachusetts Mutual Life Ins. Co. v. Ludwig,* 426 U.S. 479, 480–81, 96 S.Ct. 2158, 2159, 48 L.Ed.2d 784 (1976) (while "appellee may not attack the decree with a view either to enlarging his own rights ... or of lessening the rights of his adversary[,] ... it is likewise settled that the appellee may, without taking a cross-appeal, urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court or an insistence upon matter overlooked or ignored by it") (quoting *United States v. American Ry. Exp. Co.,* 265 U.S. 425, 435, 44 S.Ct. 560, 564, 68 L.Ed. 1087 (1924)), this court has a duty to raise *sua sponte* the issue of whether the State of Kansas is an indispensable party. *See Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U:S. at 106, 111, 88 S.Ct. at 736, 738–39; *Wichita & Affiliated Tribes of Okla. v. Hodel,* 788 F.2d 765, 772 n. 6 (D.C.Cir.1986); *Weisberg v. United States Dep't of Justice,* 631 F.2d 824, 826–30 & n. 40 (D.C.Cir. 1980).

4. The court reviews determinations under Rule 19(a)(2)(ii) de novo. *See Western Md. Ry.,* 910 F.2d at 963 n. 6.

Kansas enjoys immunity under the Eleventh Amendment of the United States Constitution that extends to suits commenced by Indian tribes. *See Blatchford v. Native Village of Noatak and Circle Village,* 501 U.S. 775, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991). While Congress can abrogate this immunity, its intent to do so must be "unmistakably clear." *See Dellmuth v. Muth,* 491 U.S. 223, 228, 109 S.Ct. 2397, 2400, 105 L.Ed.2d 181 (1989). Likewise, Kansas can waive its immunity but only by explicit authorization in state law that is "express and unequivocal." *See Ford Motor Co. v. Department of Treasury of Ind.,* 323 U.S. 459, 467–68, 65 S.Ct. 347, 352, 89 L.Ed. 389 (1945). Neither has occurred here. While several courts have concluded that the Gaming Act's authorization of tribal suits against the states for bad faith in compact negotiation provides a clear expression of congressional intent to abrogate Eleventh Amendment immunity,[5] nothing suggests that the Gaming Act provides an "unmistakably clear" abrogation of state sovereign immunity when an Indian tribe seeks to compel the Secretary to act under the statute.[6] To the contrary, the fact that Congress expressly authorized particular causes of action under the Gaming Act, *see* 25 U.S.C. § 2710(d)(7)(A), and did not include the present suit among those actions, indicates that Congress did not contemplate this type of suit, and thus provided no unmistakably clear intent to abrogate Kansas' immunity. *See generally Guam v. American*

*President Lines,* 28 F.3d 142, 145–49 (D.C.Cir.1994) (reviewing law on implied causes of action). Further, nothing in the record suggests that Kansas has waived its immunity; its limited waiver for tort actions within its own courts, *see* Kan.St.Ann. § 75–6103 (1993), does not encompass suits in federal court. *See Petty v. Tennessee–Missouri Bridge Comm'n,* 359 U.S. 275, 277, 79 S.Ct. 785, 787, 3 L.Ed.2d 804 (1959). In the absence of waiver or abrogation, Kansas cannot be joined in the instant litigation.[7]

█ Consequently, the issue faced by the district court was whether "in equity and good conscience" the Tribe's lawsuit could proceed in the absence of the State of Kansas or whether the lawsuit should be dismissed because Kansas was an indispensable party. While Rule 19(b) sets forth four non-exclusive factors for the court to consider, *see supra* note 2, this court has observed that "there is very little room for balancing of other factors" set out in Rule 19(b) where a necessary party under Rule 19(a) is immune from suit because immunity may be viewed as one of those interests "compelling by themselves." *Wichita & Affiliated Tribes,* 788 F.2d at 777 n. 13 (citation omitted); *see also Enterprise Management Consultants,* 883 F.2d at 894; *Adams v. Bell,* 711 F.2d 161, 171 n. 42 (D.C.Cir.1983) (en banc), *cert. denied,* 465 U.S. 1021, 104 S.Ct. 1272, 79 L.Ed.2d 678 (1984); WRIGHT, MILLER &

---

**5.** *See Ponca Tribe of Okla. v. Oklahoma,* 37 F.3d 1422, 1428 (10th Cir.1994), *petition for cert. filed,* 63 U.S.L.W. 3477 (U.S. Dec. 9, 1994) (No. 94–1029); *Cheyenne River Sioux Tribe v. South Dakota,* 3 F.3d 273, 281 (8th Cir.1993).

**6.** There is general agreement among several circuit courts that Congress intended to abrogate the states' Eleventh Amendment immunity in enacting § 2710(d)(7) of the Gaming Act vesting jurisdiction in the district court of lawsuits by Indian tribes alleging bad faith by states in compact negotiations. But there is a split among the circuits on whether Congress has authority to abrogate state immunity when it legislates pursuant to the Indian Commerce Clause. *Compare Ponca Tribe,* 37 F.3d at 1432 (upholding congressional power to abrogate Eleventh Amendment immunity pursuant to Indian Commerce Clause), *and Cheyenne River Sioux Tribe,* 3 F.3d at 281

(same), *with Seminole Tribe of Fla. v. Florida,* 11 F.3d 1016, 1023–24 (11th Cir.) *cert. granted,* —— U.S. ——, 115 S.Ct. 932, 130 L.Ed.2d 878 (1994) (legislation enacted pursuant to Indian Commerce Clause cannot abrogate Eleventh Amendment immunity because the congressional abrogation power is limited to legislation enacted pursuant to § 5 of the Fourteenth Amendment and the Interstate Commerce Clause in Article I, § 8) (citing *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), and *Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989)).

**7.** The district court did not consider, and neither party has addressed on appeal, whether Kansas could have made a special appearance without waiving its immunity. Hence, we do not consider the issue. *See Miller v. Avirom,* 384 F.2d 319, 321–22 (D.C.Cir.1967).

KANE, § 1617, at 257.[8] Thus, notwithstanding the discretion generally accorded to the district court to consider "which factors to weigh and how heavily to emphasize certain considerations," *Cloverleaf,* 699 F.2d at 1277 (citation omitted), the district court was confronted with a more circumscribed inquiry when it assessed whether the Tribe's lawsuit could proceed "in equity and good conscience" in the absence of Kansas, which was both a necessary party and immune from the lawsuit.

### B.

■ The exercise of discretion contemplates reasoned decision making on the basis of relevant and appropriate considerations to the task at hand. *See generally Langnes v. Green,* 282 U.S. 531, 541, 51 S.Ct. 243, 247, 75 L.Ed. 520 (1930); Maurice Rosenberg, *Judicial Discretion of the Trial Court: Viewed from Above,* 22 SYRACUSE L.REV. 635 (1971). An appellate court, in reviewing for an abuse of discretion, must consider "whether the decision maker failed to consider a relevant factor, whether he [or she] relied on an improper factor, and whether the reasons given reasonably support the conclusion." *Johnson v. United States,* 398 A.2d 354, 365 (D.C. 1979) (citation omitted). *See Sports Form, Inc. v. United Press Int'l,* 686 F.2d 750, 752 (9th Cir.1982) (citing *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971)). The district court "abuses its discretion if it did not apply the correct legal standard ... or if it misapprehended the underlying substantive law." *Hunt v. National Broadcasting Co., Inc.,* 872 F.2d 289, 292 (9th Cir.1989) (preliminary injunction). *See Northern Alaska Envtl. Ctr. v. Lujan,* 961 F.2d 886, 889 (9th Cir.1992) (same). If the exercise of discretion was in error and the prejudicial impact of that error requires reversal, *see Johnson,* 398 A.2d at 366–67 (enumerating factors relevant to determining reversible error), the appellate court will hold that the district court has abused its discretion.

■ The district court found that the first two factors enumerated in Rule 19(b)—prejudice to Kansas from a judgment for the Tribe and inability to tailor a judgment to lessen or avoid the prejudice—favored dismissal, but that the two remaining factors—the adequacy of a judgment in Kansas' absence and the lack of an adequate remedy for the Tribe—plus two additional factors dictated that the lawsuit could proceed notwithstanding Kansas' absence. *Kickapoo Tribe,* 827 F.Supp. at 42–43. Specifically, the district court found no impediment to granting the relief sought by the Tribe regardless of whether Kansas was a party and concluded that dismissal of the lawsuit would leave the Tribe "without any remedy." *Id.* at 42. The court suggested that the latter consideration "may well be the most important factor in this case." *Id.* In addition to the enumerated Rule 19(b) factors, the district court also found significant that the Kansas state legislature, the entity authorized under state law to enter a tribal-state compact, had not engaged in substantial negotiations with the Tribe despite ample time to do so and that this lack of receptivity to the negotiation process thwarted the goals of the Gaming Act. *Id.* at 42–43. The district court also noted as significant that the compact had been negotiated by the Governor, who "it is assumed ... has the best interests of the State in mind" in approving the compact, thus diminishing the likelihood of prejudice to the State. *Id.* at 43. Based on this assessment, the district court concluded that Kansas was not an indispensable party.

While appropriately finding that Kansas would be prejudiced by a judgment rendered in its absence,[9] the district court concluded that the prejudice was mitigated by two considerations. First, the State of Kansas knew of the Tribe's lawsuit but it did not intervene.

---

**8.** *Cf. Confederated Tribes of the Chehalis Indian Reservation v. Lujan,* 928 F.2d 1496, 1499 (9th Cir.1991) (applying the four factors in Rule 19(b) in determining whether an Indian tribe, a necessary party immune from suit, is an indispensable party).

**9.** The inquiry as to prejudice under Rule 19(b) is the same as the inquiry under Rule 19(a)(2)(i) regarding whether continuing the action will impair the absent party's ability to protect its interest. *See Confederated Tribes v. Lujan,* 928 F.2d at 1499; *Enterprise Management Consultants,* 883 F.2d at 894 n. 4.

*Id.* at 41. Second, granting relief to the Tribe would only subject the State to obligations to which the "popularly elected" Governor, the State's highest executive official, had already agreed and obligations countenanced by Congress under the Gaming Act. *Id.* at 41–42. Each consideration was flawed, however. Failure to intervene is not a component of the prejudice analysis where intervention would require the absent party to waive sovereign immunity. *See Wichita & Affiliated Tribes,* 788 F.2d at 776. Further, assuming that the Governor could adequately represent the interests of the State in entering the compact was contrary to the controlling state law; indeed, the district court acknowledged that this same state law, having defined how Kansas' interests were to be protected under the Gaming Act, precluded the Governor from signing the compact on her own initiative. *Kickapoo Tribe,* 827 F.Supp. at 42–43. The opinion of the Supreme Court of Kansas explained the basis and importance of the division of authority in the State. *Kansas v. Finney,* 836 P.2d at 1183. Hence, the district court could not properly rely on either consideration for mitigation of the prejudice to the State of Kansas as a result of its absence from the Tribe's lawsuit.[10] While both considerations caused the district court to view the first factor under Rule 19(b)—prejudice to the State of Kansas—as "the closest issue," *id.* at 41, both considerations involved "misapprehen[sion of] the underlying substantive law." *Hunt v. National Broadcasting Co., Inc.,* 872 F.2d at 293.

■■■■ Because the district court concluded that Kansas would be prejudiced by a judgment rendered in its absence, and that,

in view of the relief sought by the Tribe, "there is no way the court can avoid the prejudice," *Kickapoo Tribe,* 827 F.Supp. at 42, the district court had grounds to dismiss the complaint for failing to join an indispensable party without consideration of any additional factors. *See Adams v. Bell,* 711 F.2d at 171 n. 42 ("Under the first and second prongs of [the Rule 19(b) evaluation], when the relief requested *must,* to satisfy plaintiffs' claims, be in derogation of the rights of a person not before the court, that person is an indispensable party."). *See also Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. at 124–25, 88 S.Ct. at 745–46. The district court, however, concluding that the prejudice was mitigated by two considerations, did consider additional factors, all of which it concluded weighed against dismissing the Tribe's lawsuit. Assuming, notwithstanding Kansas' immunity, that the district court properly proceeded to consider additional factors, *cf. id.* at 119, 88 S.Ct. at 743, the district court's assessment of them was flawed.

First, the district court found that the Tribe lacked "any other remedy" if the instant lawsuit were to be dismissed. *Kickapoo Tribe,* 827 F.Supp. at 42. To the extent that the court found an alternate remedy lacking because of the apparent reluctance by the state legislature to negotiate with the Tribe, the district court gave insufficient consideration to the Gaming Act. That Act provides a direct remedy whereby the Tribe can obtain Class III gaming rights, 25 U.S.C. § 2710(d)(7)(A)–(B), and the record showed that the Tribe was pursuing its statutory interests in another forum.[11] To the extent the court found that the Tribe lacked an

10. Nor can the Tribe persuasively maintain that § 14 of the compact, authorizing the Tribe to oversee law enforcement obligations should the State decline to exercise this authority, eliminates "any possibility of prejudice" approval of the compact would cause to Kansas "in its ability to oversee gaming conducted within its borders." *Kickapoo Tribe,* 827 F.Supp. at 42. As the district court noted, approval of the compact not only forces Kansas to oversee gambling, but it also ensures that Kansas "will be bound to a compact that was not approved in accordance with Kansas law. Being forced to abide by an allegedly unlawful compact does serve to prejudice the interests of the State." *Id.* at 41. Hence, the district court properly found that the

first factor in Rule 19(b)—prejudice to the absent party—favored dismissal.

11. The record before the district court indicated that the Tribe's lawsuit against Kansas was pending on appeal by the State following the district court's denial of the State's motion to dismiss on immunity grounds. *Kickapoo Tribe,* 827 F.Supp. at 42. In a consolidated appeal decided September 2, 1994, the Tenth Circuit held that § 2710(d)(7)(A)–(B) of the Gaming Act abrogates state immunity for purposes of a lawsuit by a tribe against a state. *Ponca Tribe of Okla.,* 37 F.3d at 1432.

adequate alternative remedy because it might not negotiate as favorable a compact with the state legislature as it had with the Governor, the district court misconceived Rule 19(b)'s fourth factor. The fourth factor requires consideration of whether "the plaintiff will have an adequate remedy if the action is dismissed," FED.R.CIV.P. 19(b), which is different from whether the plaintiff can obtain precisely the same relief elsewhere.[12] Likewise, the district court's concern that the instant lawsuit presented the only opportunity for the Tribe "to challenge the alleged wrongful acts of the federal agents," *Kickapoo Tribe,* 827 F.Supp. at 43, was misdirected; if the Secretary attempts to toll the forty-five-day period for his consideration of a properly entered Tribal–State compact, then his action can be challenged anew. Finally, while the absence of an alternative forum is properly weighed heavily against dismissal, the state's immunity counters against proceeding; even if the Tribe lacked an adequate remedy by which to vindicate its statutory rights, absence of an alternative remedy alone does not dictate retention of jurisdiction under Rule 19. *See Wichita & Affiliated Tribes,* 788 F.2d at 777; 3A MOORE'S FEDERAL PRACTICE ¶ 19.07–2[4], at 19–153 (1993).

Second, the district court reinvoked the assumption that the Governor entered the compact with State's best interests in mind as an independent ground under Rule 19(b) supporting the retention of jurisdiction. *Kickapoo Tribe,* 827 F.Supp. at 43. The Supreme Court of Kansas determined that Kansas' interests under the Gaming Act were to be defined by the legislature, not the Governor. Its decision was based on an analysis of the State constitutional provisions on separation of powers between the Governor and the legislature as well as gambling.

*State v. Finney,* 836 P.2d at 1176–77, 1181–82. Those vital State interests could not be reassessed by the court, notwithstanding the district court's apparent good intentions to preclude Kansas from interposing delays undermining the purposes of the Gaming Act. *Kickapoo Tribe,* 827 F.Supp. at 42–43.

Finally, the district court concluded that the apparent failure of the Kansas legislature to negotiate in good faith with the Tribe supported the retention of jurisdiction. *Id.* While the court might understandably have been concerned by indications that Kansas was stonewalling efforts by the Tribe to reach agreement on a compact, reliance on this consideration as a basis to retain jurisdiction was inappropriate. Not being joined in the litigation, Kansas could not respond to the court's concern about the State's conduct and the Secretary was not in a position to champion the State's position in view of his trust obligations to the Tribe. *See Heckman v. United States,* 224 U.S. 413, 444–45, 32 S.Ct. 424, 433–34, 56 L.Ed. 820 (1912); *Confederated Tribes v. Lujan,* 928 F.2d at 1500. *Cf. Wichita & Affiliated Tribes,* 788 F.2d at 775. Vigorous defense of its immunity in separate litigation cannot alone establish bad faith by the State. *See supra* note 11; *cf. Wichita & Affiliated Tribes,* 788 F.2d at 776. Moreover, Congress, anticipating such events, provided a mechanism in the Gaming Act by which Indian tribes can challenge recalcitrant conduct on the part of states and obtain Class III gaming rights. 25 U.S.C. § 2710(d)(7)(B).

### C.

While the 1966 amendment of Rule 19 was designed to emphasize the practical considerations that underlie the determination of whether to proceed, *see* CHARLES A. WRIGHT, LAW OF FEDERAL COURTS 498–99 (5th ed.

---

**12.** The Advisory Committee on the Federal Rules of Civil Procedure, in its Note on the 1966 Revision of Rule 19, stated that "[t]he fourth factor, looking to the practical effects of a dismissal, indicates that the court should consider whether there is any assurance that the plaintiff, if dismissed, could *sue effectively* in another forum where better joinder would be possible." (emphasis added). *See Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. at 112, 88 S.Ct. at 739 (an adequate remedy inquiry involves the question "whether the plaintiffs could have brought the same action, against the same parties plus [the absent party] in a state court"); *Harrell & Sumner Contracting Co. v. Peabody Peterson Co.,* 415 F.Supp. 573, 576 n. 3 (N.D.Fla. 1976) (alleged prejudice against non-local parties by state juries did not constitute basis for claim that access to state courts was an inadequate remedy under Rule 19(b)), *aff'd on other grounds,* 546 F.2d 1227 (5th Cir.1976).

1994), Kansas' indispensability as a party in the Tribe's lawsuit is hardly a formality; not only its contractual rights are at issue but its fiscal interests are also potentially at stake. *See State v. Finney,* 836 P.2d at 1176. Moreover, it was both a necessary party under Rule 19(a) and immune from suit, thereby cabining the district court's discretion to consider factors under Rule 19(b). *See Wichita & Affiliated Tribes,* 788 F.2d at 777 n. 13 (citation omitted). The district court could not properly rely on Kansas' failure to intervene in assessing mitigation of prejudice to it, nor reassess the state law question of how Kansas' interests under the Gaming Act were to be protected. Neither could the court appropriately factor into the balance, in Kansas' absence, unproven allegations about its bad faith. Kansas' immunity from the Tribe's lawsuit coupled with the district court's assessment of the first two Rule 19(b) factors indicate that the district court should have dismissed the lawsuit. *See Adams v. Bell,* 711 F.2d at 171 n. 42. Absent that, the district court's consideration of inappropriate factors in determining that "in equity and good conscience" the Tribe's lawsuit could proceed because Kansas was not an indispensable party under Rule 19(b), was an abuse of its cabined discretion.

 The situation cannot be salvaged, as the Tribe suggests, under the public interest exception to Rule 19. Stated briefly, this exception provides that when litigation seeks vindication of a public right, third persons who could be adversely affected by a decision favorable to the plaintiff are not indispensable parties. *See National Licorice Co. v. NLRB,* 309 U.S. 350, 362, 60 S.Ct. 569, 576, 84 L.Ed. 799 (1940). While the "exact contours of the public interest exception have not been defined," the exception generally applies where "what is at stake are essentially issues of public concern and the nature of the case would require joinder of a large number of persons," *Sierra Club v. Watt,* 608 F.Supp. 305, 324 (E.D.Cal.1985); *National Wildlife Fed'n v. Burford,* 676 F.Supp. 271, 276 (D.D.C.1985) (applying exception in lawsuit addressing "a matter of transcending importance"), *aff'd,* 835 F.2d 305 (D.C.Cir. 1987). Without the exception, public rights litigation would be severely curtailed because it is often infeasible to join all the persons affected by such litigation. *Id.* at 325; *see also National Resources Defense Council v. Berklund,* 458 F.Supp. 925, 933 (D.D.C.1978), *aff'd,* 609 F.2d 553 (D.C.Cir.1979). The instant case does not require the joining of an infeasibly large number of parties. Nor does it appear to implicate a matter of transcending importance of the type that has previously prompted courts to apply the exception. *See, e.g., National Wildlife Fed'n,* 676 F.Supp. at 272, 276 (federal action affecting 170 million acres of public lands implicates public rights and extends case "beyond the boundaries of a private dispute"). Furthermore, the Tribe has not pointed to any analogous holding applying the public rights exception in the face of the absent party's immunity. As a result, the public interest exception to Rule 19 is inapplicable.

Accordingly, we reverse the grant of summary judgment and remand the case to the district court with instructions to vacate the entry of judgment for the Secretary and to dismiss the complaint without prejudice.